**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 24-2433

PATRIA LAUREANO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency Case No. A044-879-555)
Immigration Judge: Carmen Rey Caldas

Argued
October 1, 2025

Before: SHWARTZ, MATEY, and FISHER, *Circuit Judges.*

(Filed: May 29, 2026)

Rebecca Hufstader **[Argued]**
Robert Jackel

Legal Services of New Jersey
100 Metroplex Drive, Suite 101
Edison, NJ 08818

*Counsel for Petitioner*

Yaakov M. Roth
Keith I. McManus
Edward C. Durant
Anthony J. Nardi **[Argued]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent*

Trina A. Realmuto **[Argued]**
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446

*Counsel for Amicus*

OPINION OF THE COURT

SHWARTZ, Circuit Judge.

Patria Laureano asks us to review the order of the Board of Immigration Appeals ("BIA") denying her withholding of

removal and relief under the Convention Against Torture ("CAT"). We have jurisdiction to review both of her claims. As to the merits, the Majority concludes that the BIA correctly denied CAT relief, and one of us would hold that the Attorney General's opinion in Matter of Y-L-, A-G- & R-S-R, 23 I. & N. Dec. 270, 274 (A.G. 2002), bars Laureano's withholding arguments, while another would hold that Y-L- is ultra vires. A third panel member would hold that we lack jurisdiction to consider any of her claims. As a result, we will deny Laureano's petition to review her CAT claim, but as to statutory withholding, because we do not have a majority, the petition for review is denied by an equally divided vote.[1]

---

[1] Because there is no majority on the outcome of Laureano's petition for review of the denial of her statutory withholding claim, we follow the practice of the Supreme Court in leaving intact the ruling under review. See Costco Wholesale Corp. v. Omega, S.A., 562 U.S. 40 (2010); Freidrichs v. Cal. Teachers Assoc., 578 U.S. 1 (2016). Our dissenting colleague objects to this nomenclature, Dissent at 12-13, but there is no panel majority on the merits of the BIA's decision on withholding. One of us would deny the petition; one would grant the petition and remand, and one would dismiss based on a lack of jurisdiction. Thus, there are insufficient votes to either adopt the BIA's holding or disturb it. The effect of our leaving intact the BIA decision is the same that would result if this had been a direct appeal rather than a petition for review, namely, an affirmance of the order, but it lacks the weight of an affirmance because there is no majority to support it.

I

Laureano, a citizen of the Dominican Republic, entered the United States as a lawful permanent resident in 1994. While in the United States, her partner physically abused and threatened her when she tried to leave him. In 2005, he sent a package containing drugs to her workplace. She was arrested and cooperated with law enforcement. Laureano's partner threatened to kill her for "this act of betrayal." AR 109.

In 2007, Laureano pled guilty to conspiracy to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846. After serving a twenty-four-month sentence, Laureano was ordered removed from the United States to the Dominican Republic in 2008. In 2009, she unlawfully reentered the United States, where she remained undetected until 2023. In 2023, she was arrested for having unlawfully reentered the United States. Her prior removal order was reinstated, Laureano thereafter applied for withholding of removal and CAT relief because she feared her former partner, who now resides in the Dominican Republic, and she did not believe that police there would protect her.

The Immigration Judge ("IJ") denied her applications. As to her request for withholding of removal, the IJ found that Laureano's heroin-trafficking offense was a presumptive "particularly serious crime" ("PSC") under Y-L-, which she could not rebut because her offense involved more than one kilogram of heroin. As to her CAT claim, the IJ found that she failed to show that her former partner would seriously harm her if she returned to the Dominican Republic and that Dominican officials would do nothing in response. The BIA adopted the IJ's decision in full and dismissed Laureano's appeal.

Within a month, Laureano petitioned for this Court to review the BIA's decision, arguing that Y-L- violated the Immigration and Nationality Act ("INA") and that she was entitled to CAT relief.

II

To begin, we must address our jurisdiction to review Laureano's petition.[2]

A

The INA requires that petitions for review "be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Laureano's order of removal was entered in 2008, and her reinstatement order was entered in 2023. Her 2024 petition for review was not filed within thirty days of either of these orders, but the Government has not pressed timeliness, Oral Argument at 1:19:30–36, and hence

[2] The Government brought the jurisdictional question that arose as a result of Riley v. Bondi, 606 U.S. 259, 273-75 (2025), to our attention via a letter submitted shortly before oral argument. In that letter, the Government asked the Court to "consider whether and to what extent the Riley decision might impact the Court's jurisdiction over this case." Rule 28(j) Letter, Dkt. No. 58 (Sep. 26, 2025). Amicus filed a letter in response, and the Court asked the parties about the subject during oral argument. The parties submitted additional letters at our request that set forth their views about our jurisdiction over the withholding claim.

has waived enforcement of this non-jurisdictional deadline. Riley v. Bondi, 606 U.S. 259, 273-75 (2025).

B

We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). Final orders of removal are orders "concluding that the alien is deportable or ordering deportation." Riley v. Bondi, 606 U.S. 259, 267 (2025) (quoting 8 U.S.C. § 1101(a)(47)(A)). Laureano's petition states that she seeks review of "the final order in withholding-only proceedings entered by the [BIA] on July 22, 2024," which denied her requests for withholding of removal and CAT relief. App. 1. Orders on withholding and CAT relief[3] do not affect removability but rather operate to bar removal to a specific country while certain country conditions exist,[4] Johnson v. Guzman Chavez, 594 U.S. 523, 531 (2021) (citing I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 428 n.6 (1987)) ("If an alien is granted withholding-only relief, DHS may not

---

[3] Statutory withholding and CAT relief are both forms of "withholding-only" relief. See Riley, 606 U.S. at 263; Inestroza-Tosta v. Att'y Gen., 105 F.4th 499, 506 (3d Cir. 2024), abrogated on other grounds by Riley, 606 U.S. 259.

[4] Neither statutory withholding or CAT "prevents DHS 'from removing [the] alien to a third country other than the country to which removal has been withheld or deferred.'" Johnson v. Guzman Chavez, 594 U.S. 523, 531-32 (2021) (alteration in original) (quoting 8 C.F.R. §§ 208.16(f), 1208.16(f)); see Nasrallah, 590 U.S. at 582 ("But the noncitizen still 'may be removed at any time to another country where he or she is not likely to be tortured.'" (quoting 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f))).

remove the alien to the country designated in the removal order unless the order of withholding is terminated."); Nasrallah v. Barr, 590 U.S. 573, 582 (2020) ("CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country."); 8 C.F.R. § 208.16(b)(1)(i)(A), and are thus themselves not removal orders, Riley, 606 U.S. at 263 (discussing withholding-only orders). Because the order denying Laureano CAT relief and withholding of removal is not a final order of removal, we must look elsewhere for jurisdiction.

In doing so, we consider the order that gave rise to Laureano's applications for statutory withholding and CAT relief: the 2023 reinstatement order. The 2023 reinstatement order held that she is "removable as an alien who has illegally reentered the United States." AR 321. To issue that order, the immigration officer had to determine that (1) Laureano was subject to a prior order of removal, (2) the individual before him was Laureano, and (3) Laureano unlawfully reentered the United States. 8 C.F.R. § 241.8(a). Only after making those determinations could the immigration officer issue the reinstatement order, which itself operates to remove Laureano from the United States, meeting the definition of a final order of removal. Riley, 606 U.S. at 267.[5] Thus, as we held in

[5] Riley did not involve a reinstated order of removal. 606 U.S. at 264-65. It defined order of removal as "an order 'concluding that the alien is deportable or ordering deportation,'" and concluded that an order unappealable to the IJ or BIA is final upon its issuance. Id. at 267 (quoting 8 U.S.C. § 1101(a)(47)(A)). The 2023 reinstatement order here meets those criteria as it concludes that Laureano is deportable "as an

United States v. Charleswell, § 1252(a)(1)'s jurisdictional grant over final orders of removal extends to reinstated orders of removal. 456 F.3d 347, 353 (3d Cir. 2006) ("[W]e consider [a reinstated removal order] a final order of the INS and it therefore falls within section 242's jurisdictional grant."); see Dinnall v. Gonzales, 421 F.3d 247, 251 n.6 (3d Cir. 2005) (same); Avila-Macias v. Ashcroft, 328 F.3d 108, 110 (3d Cir. 2003) (exercising jurisdiction under § 1252(a)(1) to review a reinstated removal order). We therefore would have jurisdiction under § 1252(a)(1) to review Laureano's 2023 reinstated removal order.

Because Laureano does not explicitly seek review of her reinstated removal order, we must determine whether we have jurisdiction to review the orders that denied her request to withhold her removal. Under Riley, we do.[6] In Riley, the petitioner challenged the denial of his application for CAT relief but did not contest removability. 606 U.S. at 264-65.[7] The Court, addressing the deadline for seeking review of final

---

alien who has illegally reentered," AR 321, and is not appealable to the agency, 8 U.S.C. § 1231(a)(5).

[6] By holding that we have jurisdiction here, we depart from Navarrete v. Bondi, 170 F.4th 1214 (9th Cir. 2026), which primarily adopted the reasoning in Justice Thomas's Riley concurrence. The court has ordered the parties to brief whether the case should be reheard en banc. Order, No. 24-2776, Dkt. No. 56 (9th Cir. May 14, 2026).

[7] Like Laureano's, Riley's petition for review neither named nor attached a final order of removal. See Riley v. Bondi, No. 23-1270, App. 45 (U.S. Jan. 3, 2025) (Riley's petition for review, attaching only the BIA's order vacating the IJ's order that granted CAT relief).

removal orders, held that, absent waiver of that deadline, petitioners must file for review within thirty days of a final order of removal, even if their applications for withholding-only relief have not yet been decided. Id. at 272. The Court recognized that this rule presented a practical problem: petitioners like Riley who wish to challenge withholding-only determinations but not removability must petition for review before those withholding-only determinations are made. To address this problem, the Court suggested that once a final order of removal is issued, the petitioner can petition for review, despite having no challenge to removability, and the court of appeals can hold the matter until "the withholding issue is ready for review." Id. This demonstrates that the Supreme Court had no doubt that courts of appeals have jurisdiction[8] to review withholding-only rulings independent of any substantive review of final orders of removal.[9]

[8] For such review to be procedurally proper, either the petition must have been filed within thirty days of a final removal order, or the Government must have waived or not pressed any untimeliness issue. Riley, 606 U.S. at 267-77. That requirement, however, has no bearing on the court of appeals's jurisdiction. Id.

[9] Consistent with Riley's contemplation of jurisdiction to review withholding-only determinations absent a challenge to removability, we have, both before and after Riley, exercised jurisdiction under § 1252(a)(1) when petitioners subject to final orders of removal do not challenge removability but rather seek review of denials of asylum, statutory withholding, or CAT protection. See, e.g., Gomez-Gabriel v. Att'y Gen., 146 F.4th 327, 329-30 & n.1 (3d Cir. 2025) (per curiam) (deciding petition for review of a BIA order that "affirm[ed], without opinion," the IJ's denial of

withholding of removal although that BIA order did not explicitly order removal); Manuel-Soto v. Att'y Gen., 121 F.4th 468, 470 (3d Cir. 2024); Argueta-Orellana v. Att'y Gen., 35 F.4th 144, 146-47 (3d Cir. 2022) (reviewing, under § 1252(a)(1), BIA decision that dismissed appeal but did not order removal); Carneiro v. Att'y Gen., No. 25-1060, 2025 WL 3281409, at *1 & n.1 (3d Cir. Nov. 25, 2025) (not precedential); Lopez-Villeda v. Att'y Gen., No. 24-2916, 2026 WL 788904, at *1-2 (3d Cir. Mar. 20, 2026) (not precedential).

These cases, in which the petitioners conceded removability, show that a challenge to a noncitizen's removability determination is not a prerequisite for our jurisdiction. The petitioners in these cases sought asylum in addition to CAT relief and withholding. Asylum differs from withholding and CAT relief because it allows a removable individual to remain in the United States, as opposed to barring removal to a specific country, but like CAT relief and withholding, it "does not convey a right to remain permanently in the United States, and may be terminated" due to changed circumstances. 8 U.S.C. § 1158(c)(2); Guzman Chavez, 594 U.S. at 536 (providing that withholding-only relief does not afford permanent right to remain); see Paripovic v. Gonzales, 418 F.3d 240, 244 (3d Cir. 2005). Specifically, if the Attorney General determines that . . . owing to a fundamental change in circumstances," such as the asylum recipient no longer has a well-founded fear of persecution on account of a protected ground in their country of nationality, asylum status may be terminated and removal ordered. 8 U.S.C. §§ 1101(a)(42)(A), 1158(c)(2) & (3). Thus, as in cases seeking review of orders denying withholding of removal and CAT, review of an order denying asylum can be sought although removability is conceded or under challenged. Put more simply, our exercise

Furthermore, like Laureano, the petitioner in Riley sought review of a withholding-only determination, without contesting removability or challenging a final order of removal. The Supreme Court remanded Riley to the court of appeals for further proceedings, necessarily concluding that the court of appeals had jurisdiction.[10] The Court also noted that "if the Government makes a general practice of . . . declining to press for enforcement of the 30-day filing rule," petitioners like Riley "will not be hurt." Id. Because we are faced with the same circumstances, we also have jurisdiction here to review Laureano's withholding of removal and CAT orders.[11]

---

of jurisdiction in such cases is not contingent on a challenge to removability.

[10] The Supreme Court necessarily considered the court of appeals's jurisdiction, as (1) the decision on review was a dismissal for lack of jurisdiction (albeit on untimeliness grounds), Riley v. Garland, No. 22-1609, 2024 WL 1826979, at *1 (4th Cir. Apr. 26, 2024), cert. granted, 145 S. Ct. 435 (2024), and vacated and remanded sub nom. Riley, 606 U.S. 259, and (2) the concurrence specifically raised the issue of jurisdiction, Riley, 606 U.S. at 278 (Thomas, J., concurring). Because we are obligated to ensure that we have subject matter jurisdiction, it is irrelevant whether the parties briefed and argued the jurisdictional issue. Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented.").

[11] The so-called "zipper clause," 8 U.S.C. § 1252(b)(9), does not interfere with our jurisdiction. It provides:

> [j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding

C

The above reasons support our jurisdiction to review both the withholding of removal and CAT orders. In addition, other statutory provisions confirm our jurisdiction over the CAT order specifically. First, 8 U.S.C. § 1252(a)(4) is a source of jurisdiction to review the CAT order. It provides, in relevant part, that "[n]otwithstanding any other provision of law . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT]." § 1252(a)(4). The phrase "sole and exclusive means for judicial review of any cause or claim under the [CAT]" grants appellate courts jurisdiction to review CAT

---

> brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . by any other provision of law . . . to review such an order or such questions of law or fact.

In short, the zipper clause provides that questions arising from removal proceedings may be reviewed only in judicial review of a final order under § 1252. As explained herein, this Court reviews withholding-only determinations pursuant to our power to review final orders of removal, including reinstated removal orders, under § 1252(a)(1). Thus, that review is conducted "in review of a final order" under § 1252.

Although the Riley concurrence raised the zipper clause as an obstacle to jurisdiction in the court of appeals, 606 U.S. at 279-80 (Thomas, J., concurring), the Majority of the Court obviously disagreed as it remanded for further appellate court proceedings, id. at 277.

orders. F.J.A.P. v. Garland, 94 F.4th 620, 627-28 (7th Cir. 2024) ("[Section 1252(a)(4)] makes [the BIA's withholding-only] decisions reviewable by a court of appeals"), abrogated on other grounds by Riley, 606 U.S. 259; see also Nasrallah, 590 U.S. at 580-81 ("[Section 1252(a)(4)] provided that CAT orders . . . may be reviewed only in the courts of appeals."); id. at 585 ("[Section] 1252(a)(4) . . . provides for direct review of CAT orders in the courts of appeals.").[12] In short, § 1252(a)(4) provides courts of appeals jurisdiction to review CAT orders.

Second, the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), does not restrict that jurisdiction. The Statutory Note to FARRA provides, in relevant part:

> [n]otwithstanding any other provision of law, . . . nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the [CAT] or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to [8 U.S.C. § 1252].

§ 2242, 112 Stat. 2681-822, note following 8 U.S.C. § 1231. Read in its entirety, this note states that § 1231 shall not be

[12] The Court of Appeals for the Fourth Circuit held in Riley that § 1252(a)(4) "means only that we may review an order denying CAT relief as part of our review of a final order of removal," 2024 WL 1826979, at *2, and the Supreme Court, although it did not specify the basis for the Court of Appeals's jurisdiction, nonetheless vacated and remanded for further proceedings despite the absence of a challenge to a final order of removal. Riley, 606 U.S. at 263-65.

construed as providing jurisdiction, but it does not eliminate jurisdiction that may be provided elsewhere. As a result, when jurisdiction can be found outside of § 1231, FARRA does not deprive a federal court of jurisdiction to review CAT claims independently from final orders of removal. Because we do not rely on any part of § 1231 for jurisdiction, FARRA has no bearing on our jurisdiction here.

For these additional reasons, this Court has jurisdiction to review Laureano's CAT order.

III

Although we have jurisdiction to review the CAT order here, there is no basis to disturb the BIA's conclusion denying Laureano CAT relief. To qualify for this relief, Laureano must show it is more likely than not that (1) she will be tortured if removed to the Dominican Republic, 8 C.F.R. § 1208.16(c)(2), and (2) government officials will cause or acquiesce to the feared torture, 8 C.F.R. § 208.18(a)(1). See Saban-Cach v. Att'y Gen., 58 F.4th 716, 733 (3d Cir. 2023). The BIA correctly concluded that Laureano failed to show she would suffer torture if removed to the Dominican Republic. Even assuming the events she described meet the legal definition of torture,[13] these incidents occurred approximately fifteen years

[13] Under CAT, torture is: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

ago. Because her former partner did not force her into a relationship or beat her when they were together and given the passage of time since their last encounter, the BIA did not err in concluding Laureano did not show she would face torture if removed to the Dominican Republic. Cf. Radiowala v. Att'y Gen., 930 F.3d 577, 586 (3d Cir. 2019) (considering passage of time when evaluating whether likelihood of future torture was speculative). We will therefore deny her petition for review of the CAT order.

## IV

I now turn to Laureano's assertion that the presumption set forth in Matter of Y-L- is without basis and that it should not have prevented her from obtaining statutory withholding of removal under 8 U.S.C. § 1231(b)(3)(B).[14] For avoidance of

---

Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017) (quoting Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005)); see also 8 C.F.R. § 1208.18(a)(1).

[14] A noncitizen subject to removal may obtain withholding of removal where "the Attorney General decides that [her] life or freedom would be threatened in that country [of removal] because of [a protected statutory ground]." 8 U.S.C. § 1231(b)(3)(A). However, a noncitizen who has been convicted of a PSC is deemed "a danger to the community of the United States," id. § 1231(b)(3)(B)(ii), and thus ineligible for such relief.

Contrary to Laureano's contention, the statute does not require a separate finding of dangerousness. First, the statute's plain language provides that a noncitizen convicted of a PSC is a danger because the past participle, "having been convicted" of a PSC, modifies "alien," and thus limits those

who are a danger to those noncitizens who have been convicted of a PSC. 8 U.S.C. § 1231(b)(3)(B)(ii); see Martins v. I.N.S., 972 F.2d 657, 660 (5th Cir. 1992) (relying on grammar and structure of the "participle phrase 'having been convicted by a final judgment of a [PSC],'" to conclude that no separate dangerousness finding is necessary). Moreover, "the statute . . . does not connect its two clauses with a conjunction; rather the statute sets forth a cause and effect relationship[, so] the fact that the alien has committed a [PSC] makes the alien dangerous within the meaning of the statute." Crespo-Gomez v. Richard, 780 F.2d 932, 934 (11th Cir. 1986); see also Ramirez-Ramos v. I.N.S., 814 F.2d 1394, 1397 (9th Cir. 1987) (noting the same); Garcia v. I.N.S., 7 F.3d 1320, 1323 (7th Cir. 1993) (same). Applying these basic grammar rules, the text plainly requires only one finding—that the individual was convicted of a PSC—which in turn makes her a danger to the community. Cf. Nielsen v. Preap, 586 U.S. 392, 408 (2019) (noting that "'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose'" (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012))).

Second, multiple courts of appeals have reached this conclusion based on either the text, e.g., Yousefi v. U.S. I.N.S., 260 F.3d 318, 327 (4th Cir. 2001); Kofa v. I.N.S., 60 F.3d 1084, 1088-89 (4th Cir. 1995) (holding the statute plainly means that an individual "constitutes a danger to the community because he has been convicted of a [PSC]," and thus "once the [PSC] determination is made, the [noncitizen] is ineligible for withholding without a separate finding on dangerousness"); Martins, 972 F.2d at 661 (holding "the statute only requires the factual finding of conviction of a [PSC] to support the determination of danger to the

---

community" (internal quotations marks and citation omitted)), or Chevron deference, e.g., Denis v. Att'y Gen., 633 F.3d 201, 215 n.19 (3d Cir. 2011) (holding that, "[o]nce an alien is found to have committed a [PSC], [the BIA] no longer engage[s] in a separate determination to address whether the alien is a danger to the community," thus concluding that "neither the IJ nor the BIA, nor [the Court], need to opine as to [the petitioner's] potential danger to the community" (quoting In re N-A-M-, 24 I. & N. Dec. 336, 342 (BIA 2007)); Nkomo v. Att'y Gen., 930 F.3d 129, 135 (3d Cir. 2019) (rejecting argument that the BIA erred in failing to address whether petitioner was a danger to the community because that argument "is foreclosed by precedent" (citing Denis, 633 F.3d at 215 n.19)); Hamama v. I.N.S., 78 F.3d 233, 240 (6th Cir. 1996); Ahmetovic v. I.N.S., 62 F.3d 48, 53 (2d Cir. 1995) (expressing doubt regarding the interpretation that no separate finding is required but nonetheless deferring to the BIA's interpretation as reasonable); Garcia, 7 F.3d at 1323; Al-Salehi v. I.N.S., 47 F.3d 390, 396 (10th Cir. 1995); Mosquera-Perez v. I.N.S., 3 F.3d 553, 559 (1st Cir. 1993); Ramirez-Ramos, 814 F.2d at 1397. Loper Bright does not displace all earlier precedent that relied on Chevron, particularly where, as here, the agency's interpretation is consistent with the statute's text. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024) (noting the overruling of Chevron does "not call into question prior cases that relied on the Chevron framework"); see also Miller, 114 F.4th at 502 (holding that, as part of the Court's responsibility to "determine the meaning of statutory provisions," it "may look to the [agency's] interpretations as a body of experience and informed judgment") (internal quotation marks and citations omitted). Finally, the Attorney General's regulations are consistent with the text and our

any doubt, this section of the opinion presents only my view and is included here simply to limit the number of separate writings in this case.[15]

> Section 1231(b)(3)(B) provides:
> an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a [PSC]. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a [PSC].

8 U.S.C. § 1231(b)(3)(B). In the first sentence, the statute identifies a category of aggravated felonies—those that result in a sentence of at least five years—that are per se PSCs. § 1231(b)(3)(B). The second sentence provides that the Attorney General may determine that the noncitizen's crime is a PSC "notwithstanding the length of sentence imposed." § 1231(b)(3)(B). Relying on the second sentence, the Attorney General opined that drug trafficking crimes are presumptively PSCs, and the presumption is rebutted only in "extraordinary and compelling" circumstances. Y-L-, 23 I. &. N. Dec. at 271 n.2, 274. Specifically, the noncitizen must show

---

interpretation of it. 8 C.F.R. § 1208.16(d)(2) (stating that an individual convicted of a PSC "shall be considered to constitute a danger to the community").

[15] As noted above, the two panel members who hold we have jurisdiction to review the withholding order here are split as to the merits of the request for review.

the presence of six criteria to rebut the presumption,[16] and only then may the agency consider "whether other, more unusual circumstances . . . might justify departure from the default interpretation that drug trafficking felonies are [PSCs]." Id. at 277.

In Bastardo-Vale v. Attorney General, we held that, when an individual's crime was not an aggravated felony resulting in a sentence of at least five years, and therefore not a per se PSC under § 1231(b)(3)(B), the Attorney General may still determine whether that crime is a PSC by conducting a case-by-case assessment. 934 F.3d 255, 266 (3d Cir. 2019) (en banc); see also Amos v. Att'y Gen., 157 F.4th 313, 328 (3d Cir. 2025) (observing that if the crime's elements make it potentially a PSC, the agency then considers "the noncitizen's specific conduct when committing the offense" to determine whether, in that case, the offense was actually a PSC). Among

---

[16] The criteria include, at minimum:

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

Y-L-, 23 I. & N. Dec. at 276-77.

other considerations, we reasoned that the first sentence clearly limited the designation of per se PSCs to aggravated felonies resulting in at least five years' imprisonment, and the second sentence expressly granted the Attorney General the ability to deem an offense outside the per se category a PSC. Id. at 266-67. We presumed that Congress passed the withholding statute with knowledge of the BIA's practice of conducting individualized PSC assessments and did not intend to disturb that practice for crimes that were not statutorily per se PSCs. Id. at 266.

This interpretation aligns with the statute's plain language, structure, and purpose. See United States v. Husmann, 765 F.3d 169, 173 (3d Cir. 2014) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). As to plain language, the text focuses on whether a noncitizen has committed "a" PSC, indicating that Congress envisioned the Attorney General would focus his inquiry on the individual's crime, not a category of crimes. See Annor v. Garland, 95 F.4th 820, 829 (4th Cir. 2024) (noting the agency must consider, among other things, "whether the type and circumstances of the crime indicate that the [noncitizen] will be a danger to the community" because key to the PSC determination "is whether it indicates that the respondent poses a danger to the community").

The statutory structure further confirms that the provision grants the Attorney General authority to make individualized PSC determinations, not categorical ones. Unlike the withholding statute, the asylum statute allows the Attorney General to "designate by regulation offenses that will

be considered to be [PSCs]." 8 U.S.C. § 1158(b)(2)(B)(ii). The asylum statute's express authorization that the Attorney General may create offense categories that per se qualify as PSCs by regulation demonstrates Congress knew how to grant such authority to the Attorney General but chose not to do so in the withholding statute. See Bittner v. United States, 598 U.S. 85, 94 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning."). This choice shows Congress intended the Attorney General to exercise his authority to deem crimes PSCs for statutory withholding purposes on a case-by-case basis rather than through generally applicable rules. See Bastardo-Vale, 934 F.3d at 265-66 (noting distinctions in asylum and withholding statutes for purposes of PSC determinations).

This interpretation is also consistent with the statute's purpose. Interpreting a prior version of the statute, the BIA adopted an individualized inquiry for determining whether a noncitizen committed a PSC. See Matter of Frentescu, 18 I. & N. Dec. 244, 244 (BIA 1982). In response, Congress amended the statute by inserting a provision declaring all aggravated felonies PSCs, thus rendering all such felons ineligible for withholding of removal and eliminating the BIA's individualized consideration for those who committed such crimes. 8 U.S.C. § 1253(h) (1990); Immigration Act of 1990, Pub. L. 101-649, § 514, 104 Stat. 4978, 5053 (Nov. 29, 1990). In 1996, Congress amended the statute to give the Attorney General discretion to depart from that ban and grant statutory withholding to a noncitizen if doing so was necessary to comply with international law. Pub. L. 104-132, § 413, 110 Stat. 1214, 1269 (Apr. 24, 1996). Later that year, Congress

enacted the statute at issue here, creating one category of per se PSCs, comprised of aggravated felonies resulting in a sentence of at least five years, but not precluding the Attorney General from concluding that a crime outside of that category was a PSC. 8 U.S.C. § 1231(b)(3)(B). This history shows Congress's desire to reinstate the agency's prior practice of assessing certain crimes on a case-by-case basis.[17] Frentescu, 18 I. & N. Dec. at 244; see Bastardo-Vale, 934 F.3d at 266 (noting that Congress's "explicit statement that the Attorney General had the continuing authority to determine whether a crime is particularly serious" demonstrated its intent to not disturb the "prior practice of deciding, on a case-by-case basis, whether an alien's crime was particularly serious"); cf. Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 387 (3d Cir. 2001) (holding that due process requires an "individualized determination"

[17] This is also how the BIA interpreted the 1996 amendment. After Congress removed the categorical requirement that all aggravated felonies were PSCs, the BIA reinstituted its prior practice of conducting "individual examination[s] of the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction" for all crimes except those in the per se category. In re L-S-, 22 I. & N. Dec. 645, 645 (BIA 1999) (citing In re S-S-, 22 I. & N. Dec. 458, 458 (BIA 1999)); Frentescu, 18 I. & N. Dec. at 244). I consider this interpretation only insofar as the BIA's interpretation of a term has "shaped our jurisprudence over the years." Miller Plastic Prods. Inc v. Nat'l Lab. Rels. Bd., 141 F.4th 492, 503 (3d Cir. 2025); see also Loper Bright, 603 U.S. at 388 (noting the courts' practice of giving "great weight" to the "informed judgment of the Executive Branch—especially in the form of an interpretation issued contemporaneously with the enactment of the statute").

rather than "blindly following a categorical rule, i.e., that all drug convictions qualify as [PSCs]").[18] Put differently, this history demonstrates the current statute's purpose was to foreclose individualized consideration for one category of aggravated felonies, but maintain individualized consideration for crimes outside of that category.

For these reasons, the first sentence of § 1231(b)(3)(B) designates a category of crimes that per se constitute PSCs based on the sentence imposed. § 1231(b)(3)(B). The second sentence focuses on the noncitizen herself and the crime she committed. Id. Thus, to deem a crime outside of the statutorily enumerated per se category a PSC, the statute contemplates an individualized assessment.[19]

---

[18] Chong also supports interpreting the withholding statute to require an individualized PSC assessment because it held that due process mandates such an assessment. 264 F.3d at 386-87.

[19] Our sister circuit courts who have considered this issue have also concluded that the statute contemplates a case-by-case evaluation, not categorical rules, to determine whether crimes that were not aggravated felonies resulting in a sentence of at least five years are PSCs. Blandino-Medina v. Holder, 712 F.3d 1338, 1345 (9th Cir. 2013) (holding that "Congress has clearly expressed its intent: the overall structure of the INA compels the conclusion that Section 1231(b)(3)(B)(iv) establishes but one category of 'per se' [PSC]s, and requires the agency to conduct a case-by-case analysis of convictions falling outside the category established by Congress"); N-A-M- v. Holder, 587 F.3d 1052, 1056 (10th Cir. 2009) (observing that the "long history of case-by-case determination of [PSCs] counsels against [the] attempt to craft a bright-line rule");

Y-L- is inconsistent with such an assessment. Y-L- created a presumption that a specific class of crimes, drug trafficking felonies, are PSCs unless six specific facts are proven. 23 I. & N. at 276-77. A presumption is "something thought to be true because it is highly probable." Presumption, Black's Law Dictionary (12th ed. 2024). Indeed, "the most important consideration in the creation of [a] presumption[] is probability" and "[m]ost presumptions come into existence primarily because judges have believed that proof of fact B renders the inference of the existence of fact A so probable that it is sensible and time saving to assume the truth of fact A until the adversary disproves it." Malack v. BDO Siedman, 617 F.3d 743, 749 (3d Cir. 2010) (quotation marks and citation omitted). Thus, presumptions arise from inferences drawn from past experiences unrelated to the specific individual or circumstance before the court and therefore result in decisions that are not individualized. Cf. Gall v. United States, 552 U.S. 38, 50 (2007) (observing that applying a presumption is not an individual assessment).

Y-L-'s mandatory presumption[20] does just that, thereby directing categorial determinations that run contrary to

---

Yousefi v. U.S. I.N.S., 260 F.3d 318, 330 (4th Cir. 2001) (vacating BIA's decision as arbitrary and capricious for failing to make an individualized assessment and remanding for reconsideration of the PSC issue).

[20] Y-L- created a mandatory presumption as it requires—and does not merely permit—the IJ to reach a conclusion absent rebuttal evidence aside from evidence of the six factors required to rebut the presumption. Cf. Baghad v. Att'y Gen., 50 F.4th 386, 389-90 (3d Cir. 2022) (noting that courts treated a particular presumpting as permissive where the

§ 1231(b)(3)(B), which as explained, contemplates a case-by-case examination of whether a crime that is not an aggravated felony resulting in a sentence of at least five years is a PSC. 8 U.S.C. § 1231(b)(1)(B); cf. Zebley v. Bowen, 855 F.2d 67, 71, 76 (3d Cir. 1988) (holding a regulation providing that a child is deemed disabled only if his impairment meets criteria listed in the regulation, regardless of the actual impairment's severity, does not provide an individualized assessment as required by the Social Security statute). Directing IJs to conclude that any drug trafficking crime is a PSC when any of the six criteria are not proven constrains IJs from considering mitigating factors or explanations in making PSC determinations.[21] In this very case, because Laureano's offense of conviction involved one or more kilograms of heroin—and hence could not be deemed a "very small" quantity, Y-L-, 23 I. &. N. Dec. at 276— she was deemed to

---

court did not "require a jury or judge to reach certain conclusions absent rebuttal evidence"). It therefore provides more than "guidance" to IJs, Concurrence at 6, and it requires an individualized assessment of crimes outside the per se category only if the six criteria are present. If they are not, it necessarily categorizes the crime as a PSC, leading to the denial of withholding without consideration of any other individualized circumstances.

[21] Since Y-L-, albeit in a case outside the drug trafficking context, the Attorney General has announced that adjudicators may consider an individual's mental health in making PSC determinations, demonstrating the agency's recognition that individual factors, rather than blanket rules, are relevant when evaluating convictions that are not for aggravated felonies resulting in a sentence of at least five years. In re B-Z-R, 28 I. & N. Dec. 563, 567 (Op. Att'y Gen. 2022).

have committed a PSC and was unable to offer evidence explaining the circumstances of her involvement, including duress or coercion. Such evidence may have led the IJ to conclude that Laureano did not commit a PSC,[22] and because Y-L- precludes considering such individual evidence, it is contrary to § 1231(b)(3)(B).

While the Attorney General may provide guidance on PSC determinations and may have acted within his discretion had he said the Y-L- criteria could be considered as non-exhaustive factors, the use of a mandatory presumption—rebuttable by proof of only six specific facts—was tantamount to creating a categorical rule barring individualized evaluation. See Malack, 617 F.3d at 749. Thus, by creating Y-L-'s presumption to guide the PSC determination, the Attorney General acted outside the statute's grant of authority to make case-by-case evaluations on this subject. 23 I. & N. at 276-77; see DeCarvalho v. Garland, 18 F.4th 66, 71 (1st Cir. 2021) (questioning the applicability of Y-L- given "Congress's increasingly nuanced view of drug trafficking offenses"). Therefore, reliance on the Y-L- presumption was legal error, and I would grant the petition to review the withholding ruling and remand for the BIA to review the claim without applying the Y-L presumption.

V

For these reasons, the petition for review is denied.

---

[22] Indeed, the BIA acknowledged that the presumption precluded it from considering Laureano's "sympathetic and extenuating circumstances." AR 6.

*Patria Laureano v. Attorney General United States of America*
No. 24-2433

FISHER, *Circuit Judge*, concurring and dissenting.

Patria Laureano asks us to review the Board of Immigration Appeals' order denying withholding of removal and relief under the Convention Against Torture (CAT). I concur that we have jurisdiction, that the BIA correctly denied CAT relief, and that we should deny the petition for review. Accordingly, I join in full Parts I, II, III, and V of the opinion of the Court. However, because the BIA correctly denied withholding of removal by relying on the presumption announced in *Matter of Y-L-*, 23 I. & N. Dec. 270 (A.G. 2002), I respectfully dissent from Part IV of the opinion of the Court.

A noncitizen may not be removed to a country where that individual's "life or freedom would be threatened . . . because of . . . race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Congress narrowed this already slight exception by barring withholding for any noncitizen who "having been convicted by a final judgment of a particularly serious crime is a danger to the community." *Id.* § 1231(b)(3)(B)(ii); *see also* 8 C.F.R. § 208.16(d)(2). When Congress first added this provision to the Immigration and Nationality Act, it gave no definition of what counted as a "particularly serious crime," instead "leaving it for the Attorney General to define." *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 945 (9th Cir. 2007). The Attorney General delegated that authority to the BIA, which established a multi-factor test to determine whether a given crime was particularly serious. *Id.* (citing *Matter of Frentescu*, 18 I. & N. Dec. 244, 244 (B.I.A. 1982)).

Partially overruling this approach in 1990, Congress adopted a categorical rule that classified all aggravated felonies as particularly serious crimes, which "preclud[ed] case-by-case analysis." *Id.* at 946 (citing Immigration Act of 1990, Pub. L. 101–649, § 515, 104 Stat. 4978, 5053 (Nov. 29, 1990)). A few years later, Congress replaced this "categorical rule" with a rebuttable "presumption that aggravated felonies are particularly serious." *Id.* (citing Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, § 413(f), 110 Stat. 1214, 1269 (Apr. 24, 1996)). Finally, Congress settled on the two-tiered approach that governs today:

> [A]n alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009-602 (codified as amended at 8 U.S.C. § 1231(b)(3)(B)).

In 2002, the Attorney General invoked his authority under § 1231(b)(3)(B) when he decided *Matter of Y-L-*, announcing a presumption that "aggravated felonies involving unlawful trafficking in controlled substances" are "presumptively" particularly serious crimes regardless of the length of the sentence imposed. *Matter of Y-L-*, 23 I. & N. Dec. at 274. A noncitizen can rebut this presumption by showing "extraordinary and compelling circumstances," which requires

satisfaction of all of six enumerated criteria.[1] *Id.* at 276–77; *see also Park v. Garland*, 72 F.4th 965, 975 (9th Cir. 2023). Because Laureano, who was convicted for conspiracy to possess and distribute one kilogram or more of heroin, "provided no evidence to show what amount of heroin she possessed," the BIA found that she could not establish that her offense involved "a very small quantity of controlled substance," one of the criteria under *Matter of Y- L-*. Admin. Rec. 4.

Each party agrees that the statute "unquestionably delegates discretion to the agency to determine that 'notwithstanding the length of sentence imposed, [a noncitizen] has been convicted of a particularly serious crime.'" Pet'r Br. 36 (alteration in original) (quoting 8 U.S.C. § 1231(b)(3)(B)); *see also* Resp't Br. 18. This understanding aligns with our past interpretation of § 1231(b)(3)(B) as an

---

[1] The six criteria are:

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

*Matter of Y- L-*, I & N Dec. 270 at 276–77.

express delegation to the Attorney General. *See Denis v. Att'y Gen.*, 633 F.3d 201, 214 (3d Cir. 2011) ("The statute itself expressly grants the Attorney General discretion to decide whether an alien committed a particularly serious crime . . . ."). Therefore, we must "ensur[e] the agency has engaged in 'reasoned decisionmaking' within th[e] boundaries" of that delegated authority. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)).

The INA provides "no textual or contextual indicators" limiting "how the [Attorney General] should determine whether an alien has committed a 'particularly serious crime.'" *Denis*, 633 F.3d at 214 (quoting *Chong v. INS*, 264 F.3d 378, 387 (3d Cir. 2001)). Nonetheless, Laureano insists that § 1231(b)(3)(B) delegates authority "to immigration judges and the BIA to determine," but only "on a case-by-case basis, whether an aggravated felony with a sentence of less than five years, or a crime that is not an aggravated felony, warrants such designation." Pet'r Br. 33. But Laureano's reading clashes with Congress's express delegation of authority to the "Attorney General," not to "immigration judges and the BIA." *Compare* 8 U.S.C. § 1231(b)(3)(B) *with* Pet'r Br. 33. In any event, by requiring consideration of the six criteria, *Matter of Y- L-* necessarily requires an "individualized assessment" of convictions falling outside the *per se* category established by Congress. Maj. Op. Part IV.

Here, for example, the IJ discussed the individual facts surrounding Laureano's conspiracy conviction, including a five-page explanation of Laureano's testimony and why it was credible. The IJ acknowledged that Laureano alleged she never took possession of the drugs and that she had no advance knowledge that the package was being mailed to her. Nevertheless, the IJ noted that Laureano did not provide

testimony or otherwise demonstrate that the crime involved only a small quantity of drugs. Applying these case-specific facts to the framework established in *Matter of Y-L-*, the IJ determined that Laureano's conspiracy conviction is a particularly serious crime.

Judge Shwartz concludes that the "plain text" of § 1231(b)(3)(B) "focuses on whether a noncitizen has committed 'a' [particularly serious crime]," which "indicat[es] that Congress envisioned the Attorney General would focus his inquiry on the individual's crime, not a category of crimes." Maj. Op. Part IV. But a careful review of the first sentence of that subsection, which also uses a singular "a," contradicts that logic: a noncitizen "who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years"—a category of crimes—has committed "*a particularly serious crime*." 8 U.S.C. § 1231(b)(3)(B) (emphasis added). The focus is indeed on whether a noncitizen committed "a" particularly serious crime, but nothing in the text indicates the Attorney General cannot categorize various types of crimes in making that determination.

Under *Matter of Y-L-*, rebutting the presumption is undeniably difficult. But contrary to Laureano's suggestion, *Matter of Y-L-* does not impose an "impossible burden" or a second "per se rule." Pet'r Br. 14, 27. The Attorney General did not instruct IJs to deny all withholding applications by convicted drug traffickers. *See Matter of Y-L-*, 23 I. & N. Dec. at 276. Instead, he explicitly stated that he was not creating a *per se* category of "particularly serious crimes" because he wanted to leave open the possibility of rebuttal. *Id.* The presumption "is just that—a presumption" that "can be rebutted." *Arellano v. McDonough*, 598 U.S. 1, 6 (2023). And as the Government points out, noncitizens have indeed

succeeded in rebutting the presumption. *See* Resp't Br. 31–32 (citing Supp. App. 2, 5, 20–24, 40); *see also id.* at 32 n.8 ("Additionally, DHS has provided [Laureano's] counsel with a non-exhaustive list of other cases where the presumption was rebutted.").

Our Court, too, has recognized that a petitioner can rebut the presumption. *See Lavira v. Att'y Gen.*, 478 F.3d 158, 165 (3d Cir. 2007) (remanding for the BIA to consider facts in the record that "appear to place [the petitioner] squarely within the exception carved out by the six-part test in *Matter of Y-L-*"); *Lopez v. Att'y Gen.*, No. 23-1557, 2024 WL 637465, at *1 n.1 (3d Cir. Feb. 15, 2024) (noting that the petitioner's conviction "does not bar withholding" because the IJ held it "falls under the exceptions set forth in *Matter of Y-L*"). *Matter of Y-L-* provides guidance to IJs, not a guarantee that a withholding application will be denied. And that framework is within the Attorney General's expressly delegated authority.

Amicus argues that *Matter of Y- L-* "precludes consideration of coercion and duress" even though "[d]uress and coercion have long been recognized to diminish individual responsibility to such a degree that, under certain circumstances, they provide a defense to civil or criminal liability." Amicus Br. at 20. Indeed, duress and coercion can provide a defense to criminal liability, including in federal narcotics prosecutions. *See United States v. Santos*, 932 F.2d 244, 245, 250 (3d Cir. 1991) (noting that the defendant was entitled to a jury instruction on duress in a trial for conspiracy to possess with intent to distribute). But by the time the noncitizen is in withholding-only proceedings—after a criminal conviction—she already had an opportunity to raise duress and coercion as defenses in the criminal prosecution. And if she had been meritorious, there would not be any conviction subject to a particularly serious crime

determination. In cases like this one, where the noncitizen pleads guilty and thus chooses not to pursue any defenses, she would have been advised “regarding the risk of deportation.” *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010). If not, she may bring a claim for ineffectiveness of counsel, *see id.*, but she cannot argue to the BIA that *Matter of Y-L-* precluded “consideration of coercion or duress,” Amicus Br. 20.

Also, Amicus invokes *Negusie v. Holder*, 555 U.S. 511 (2009), for the proposition that “courts have particularly emphasized consideration of coercion and duress in immigration matters.” Amicus Br. 21. The Supreme Court in *Negusie* considered the BIA’s interpretation of a different bar to the withholding of removal—the “persecutor bar,” 555 U.S. at 514, which precludes eligibility for withholding of removal if the Attorney General determines that the noncitizen “ordered, incited, assisted, or otherwise participated in the persecution of an individual.” 8 U.S.C. § 1231(b)(3)(B)(i). The Court remanded with instructions that the BIA use its then-existing “*Chevron* discretion” to interpret the statute in the first instance and decide whether the persecutor bar allows consideration of duress or coercion. *Negusie*, 555 U.S. at 523. The Court did not provide any guidance on that question, and, ultimately, the Attorney General decided that “[t]he bar to eligibility for asylum and withholding of removal based on the persecution of others does not include an exception for coercion or duress.” *Matter of Negusie*, 28 I. & N. Dec. 120, 120 (A.G. 2020). That precedent still stands. So, although courts may emphasize coercion and duress in immigration matters, as amicus argues, invoking coercion and duress does not always carry the day.

For the foregoing reasons, I conclude that the rebuttable-presumption framework outlined in *Matter of Y- L-* is a valid exercise of the Attorney General’s delegated

authority and that the BIA properly applied it in this case. Therefore, I would hold that Laureano's petition for review as to the statutory withholding claim fails on this basis.

MATEY, *Circuit Judge*, dissenting.

Today's lead opinion is without precedent. The panel reaches to resolve a jurisdictional question, resulting in a stark new circuit split. Along the way, it invents a new standard for the affirmance of administrative decisions in appeals without a panel majority, a question no party has briefed and this Court has never addressed. And it tucks a dissent into Section IV that reaches a conclusion rejected by the majority. That absence of precedent on all of this is replaced with one new "precedent" that, I suspect, will not long last in the reporters. I would fix the mistakes now without the cost of en banc, or the certainty of certiorari. That is why I must respectfully dissent.

**I.**

**A.**

Laureano is a citizen of the Dominican Republic who was admitted to the United States in 1994. She was arrested in 2005 for heroin trafficking, and pleaded guilty in 2007 to Conspiracy to Possess with Intent to Distribute One Kilogram or More of Heroin in violation of 21 U.S.C. § 846. After serving a twenty-four month prison sentence, Laureano was returned to the Dominican Republic under a final removal order issued in September 2008. Laureano almost immediately illegally reentered the United States, where she remained undetected and unauthorized for the next fifteen years.

In 2023, DHS gave Laureano a notice of intent to reinstate her prior removal order. Laureano did not contest her removability but expressed a fear that she would be harmed by

an ex-boyfriend in the Dominican Republic[1]—last seen in 2009—and applied for withholding of removal and protection under CAT.

**B.**

Congress, through the INA, allows aliens to seek judicial review of their "final order of removal," 8 U.S.C. § 1252(a)(1), a process that "shall be the sole and exclusive means for judicial review of an order of removal," *id.* § 1252(a)(5). And it set a tight timeline, requiring a petition be filed "not later than 30 days after the date of the final order of removal," *id.* § 1252(b)(1). A petition for review of a removal order must also contain all legal and factual challenges the alien wants to raise. *See id.* § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order under this section."). A petition for review is the only source of jurisdiction, not just over removal orders, but over "any cause or claim

---

[1] Prior to her removal, Laureano had two children in the United States with this ex-boyfriend, who was removed to the Dominican Republic sometime between 2003 and 2005 after serving a prison sentence for drug trafficking. And after her illegal reentry, Laureano partnered with two men resulting in two more children. The father of her third child is a Dominican national who reentered the United States unlawfully alongside her, but who has since been removed. The father of her fourth child, who is her current spouse, is another Dominican national without any current authorization to reside in the United States.

by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under" the INA. *Id.* § 1252(g).[2] Taken together, these requirements ensure that judicial review of such matters will be limited to a single petition filed within thirty days of a "final order of removal" and raising all legal and factual issues "arising from" that order.[3]

The Supreme Court has confirmed this statutory scheme by dispelling some circuit courts' misunderstanding of what

[2] Congress has taken care to clarify that this applies with equal force to the Convention Against Torture. The Foreign Affairs Reform and Restructuring Act of 1998 (FARRA)—which codifies the United States' obligations under the Convention, *see Nasrallah v. Barr*, 590 U.S. 573, 580 (2020)—confirms that petitions under Section 1252 are the sole mechanism for judicial review of CAT orders. *See* FARRA § 2242(d), 112 Stat. 2681-822, codified at 8 U.S.C. § 1231 note ("[N]othing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the [CAT] except as part of the review of a final order of removal pursuant to [Section 1252]."). The INA includes the same limitation: "Notwithstanding any other provision of law . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT] . . . ." 8 U.S.C. § 1252(a)(4).

[3] Nothing suggests that Congress envisioned "second or successive" petitions—much less that it sought to give a deported alien a new shot at judicial review every time she unlawfully reentered the country.

qualifies as a "final order of removal." *See Riley v. Bondi*, 606 U.S. 259 (2025). Before, some circuit panels interpreted Section 1252(b)(1) to allow aliens to file petitions within thirty days of a BIA decision denying relief in withholding-only proceedings, reasoning that "an 'order of removal' does not become 'final' until [the BIA] decides an alien's request for withholding of removal." *Inestroza-Tosta v. Att'y Gen.*, 105 F.4th 499, 513 (3d Cir. 2024); *see also id.* at 514 n.12 (collecting cases). *Riley* rejected that reading since the INA defines a "final order of removal" as the order "concluding that the alien is deportable or ordering deportation." 606 U.S. at 267 (quoting 8 U.S.C. § 1101(a)(47)(A)). A BIA decision denying withholding of removal does no such thing, since it "does not affect the validity of a previously issued order of removal or render that order non-final." *Id.* at 269.[4] Instead, when an alien like

[4] I agree that *Riley*'s reasoning applies equally to both statutory withholding and CAT relief. *See* Op. 6 n.3. After all, neither statutory withholding nor CAT relief categorically prevents an alien's deportation, since the alien may be removed to a third country not covered by the grant of withholding or CAT relief. *See* Op. 6 n.4; *Pino-Porras v. Att'y Gen.*, No. 22-3419, 2025 WL 1752491, at *7 (3d Cir. June 25, 2025) (Matey, J., dissenting); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 536–37 (2021) (noting that, because "a grant of withholding does not prevent the DHS from removing an alien to a country other than the one to which removal has been withheld," it does not answer "the antecedent question *whether* an alien is to be removed from the United States") (quotation omitted); *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) (noting that an order granting withholding relief is "not itself a final order of removal" because it "means only that, notwithstanding the order of removal, the noncitizen may not be removed to the

Laureano concedes she is removable, her administrative removal order will serve as the "Executive's *final* determination on the question of removal"—triggering the alien's thirty-day deadline to petition for review of that determination. *Id.* at 267.

While Laureano undeniably filed her petition much too late to satisfy Section 1252(b)(1), the Justice Department has chosen to forgive that error.[5] But *Riley* also reveals that Laureano's petition suffers from an even more glaring defect: it seeks review only of "the final order in withholding-only

---

designated country of removal, at least until conditions change in that country," although "the noncitizen still may be removed at any time to another country" (internal quotation marks omitted)).

[5] The Justice Department has "waived enforcement" of Section 1252(b)(1)'s "non-jurisdictional deadline," Op. 6, but not because "the Government has not pressed timeliness," *id.* Rather, counsel affirmatively declined to invoke that bar and seek dismissal of Laureano's petition as untimely. Oral Argument at 1:19:30–36 ("With respect to the timeliness, the Court can move on to the merits of . . . this case and doesn't need to decide that question."); *id.* at 1:20:45–50 ("With respect to the timeliness point, we don't think it is relevant to this case here . . . . We are not pressing it in this case."); *see United States v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right," while waiver is the "intentional relinquishment or abandonment of a right."). In a future case, where there is no affirmative waiver of Section 1252(b)(1)'s deadline, dismissing an untimely petition honors our "administrative and institutional interest in enforcing appellate deadlines." *See Long v. Atl. City Police Dep't*, 670 F.3d 436, 447 n.18 (3d Cir. 2012).

proceedings entered by the [BIA] on July 22, 2024." App. 1, Laureano PFR. And as the lead opinion correctly notes, that order "is not a final order of removal." Op. 7. That should mark the end of this petition.

## II.

Instead, the lead opinion stretches to create the jurisdiction precluded by the INA, two-stepping around statutory limits on judicial review. First, the lead opinion recasts the 2023 reinstatement of Laureano's removal as the original 2008 removal order. Second, the lead opinion announces that courts can now review standalone challenges to the denial of withholding-only relief, even without any challenge to an alien's removal order. Respectfully, that dance defies the INA.

### A.

The lead opinion claims we "have jurisdiction under [Section] 1252(a)(1) to review Laureano's 2023 reinstated removal order." Op. 8. This treats Laureano's reinstatement decision as a "final order of removal," under the premise that DHS's reinstatement of her removal order "itself operates to remove Laureano from the United States." Op. 7.[6]

[6] The lead opinion looks to a few words from Laureano's reinstatement decision to argue that order "concludes that Laureano is deportable 'as an alien who has illegally reentered.'" *See* Op. 7–8 n.5 (quoting A.R. 321). But that document—revealingly captioned "Notice of Intent/Decision to *Reinstate Prior Order*" (my emphasis)—repeats time and time again that the 2008 order already concluded that Laureano is deportable. A.R. 321 ("You are an alien subject to a prior order of

That is incorrect, as *Riley* makes clear: an alien's "order of removal" is the "order concluding that the alien is deportable or ordering deportation." 606 U.S. at 267 (quoting 8 U.S.C. § 1101(a)(47)(A)).[7] A reinstatement decision is different,[8] since it merely effectuates the original removal order. *See* 8 U.S.C. § 1231(a)(5) ("[T]he prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed . . . and the alien shall be removed *under the prior order* at any time after the reentry.") (emphasis added). Since there is no

---

deportation/exclusion/removal entered on September 8, 2008 at San Antonio, Texas."); *id.* ("I have determined that the above-named alien is subject to removal through reinstatement of the prior order."); *id.* ("In accordance with Section 241(a)(5) of the [INA], you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order.").

[7] *Riley* "did not involve a reinstated order of removal." *See* Op. 7 n.5 (citing 606 U.S. at 264–65). But its definition of a "a final order of removal" necessarily excludes a removal order's reinstatement, as I explain.

[8] Reinstatement decisions are issued under an "expedited process for aliens who reenter without authorization after having already been removed." *Guzman Chavez*, 594 U.S. at 529. Under its own regulations, DHS "obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the order." *Id.* at 530 (citing 8 C.F.R. §§ 241.8(a)–(c), 1241.8(a)–(c)).

new command, there is no new "order of removal."[9] That makes sense, since "an alien subject to a reinstated order of removal will not have any removal proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2021).

The lead opinion cannot sidestep this issue. "An order is either a 'final order of removal' or it is not." *Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 196 (2d Cir. 2022).[10] A reinstatement decision is not because, like the CAT order at issue in *Riley*, it cannot "affect the validity of a previously issued order of removal or render that order non-final." *Riley*, 606 U.S. at 269.

To be sure, the lead opinion cites prior panel decisions treating reinstatement decisions as removal orders for

---

[9] *See also United States v. Rodriguez*, 162 F.4th 288, 294 (2d Cir. 2025) ("Reinstatement of removal involves no separate determination of removability, limited procedural protections, and no new removal order. Instead, the noncitizen is simply removed 'under the prior order.'" (quoting 8 U.S.C. § 1231(a)(5)).

[10] The panel in *Bhaktibhai-Patel* recognized that it was bound by "questionable precedent that implicitly holds that a reinstatement decision itself qualifies as a final removal order under § 1252." 32 F.4th at 195 (citing *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 150 (2d Cir. 2008)), *abrogated on other grounds by Riley*, 606 U.S. 259. But the panel detailed how that circuit precedent "rests on an unstable foundation," particularly since Section "1231(a)(5) does not condition the reinstatement of the prior order on any subsequent order that DHS may issue" but "instead directs that the prior order is automatically reinstated by operation of law." *Id.*

jurisdictional purposes.[11] But none of these opinions examined, let alone justified, transforming reinstatements into the "functional equivalent of a final order of removal." *Dinnall v. Gonzales*, 421 F.3d 247, 251 n.6 (3d Cir. 2005) (quoting *Arevalo v. Ashcroft*, 344 F.3d 1, 9–10 (1st Cir. 2003)).[12] Even more, those assumptions about jurisdiction are inconsistent with the Supreme Court's later *Riley* opinion (and *Guzman Chavez* for that matter), so we can no longer follow their lead. *See Lebanon Farms Disposal, Inc. v. County of Lebanon*, 538 F.3d 241, 249 n.16 (3d Cir. 2008) ("An intervening decision of the Supreme Court is a sufficient basis for us to overrule a prior panel's opinion without referring the case for an en banc decision.").

Laureano's "final order of removal" is the order issued in September 2008, not that order's reinstatement fifteen years later. Since Laureano does not challenge the 2008 order—or even the denial of any requested relief from that order—that should end this case.

---

[11] *See* Op. 7–8 (citing *United States v. Charleswell*, 456 F.3d 347, 353 (3d Cir. 2006); *Dinnall v. Gonzales*, 421 F.3d 247, 251 n.6 (3d Cir. 2005); *Avila-Macias v. Ashcroft*, 328 F.3d 108, 110 (3d Cir. 2003)).

[12] *See also Charleswell*, 456 F.3d at 353 ("[A]lthough 'a reinstatement order is not literally an "order of removal" because it merely reinstates a previously issued order of removal or deportation[]' we consider it a final order of the INS.") (quoting *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002)).

**B.**

But even treating the reinstatement of a removal order as the actual removal order cannot justify the lead opinion's exercise of jurisdiction. After all, "Laureano does not explicitly seek review of her reinstated removal order." Op. 8. So the lead opinion pivots to announce a new rule: "courts of appeals have jurisdiction to review withholding-only rulings independent of any substantive review of final orders of removal." Op. 9 (footnotes omitted). But that notion lacks a foundation in the INA and *Riley*'s recent discussion, and creates an immediate split with the Ninth Circuit.

**1.**

Avoiding the INA itself, the lead opinion turns instead to a single post-*Riley* opinion to decide this court can consider petitions that do not challenge a "final order of removal," but only the denial of withholding relief from that order. *See* Op. 9–10 n.9 (citing *Gomez-Gabriel v. Att'y Gen.*, 146 F.4th 327, 330 n.1 (3d Cir. 2025) (per curiam)).[13] But I doubt we can place

---

[13] The lead opinion also looks to Section 1252(a)(4) as a backup "source of jurisdiction to review the CAT order." Op. 12. But all Section 1252(a)(4) does is confirm that our review of a CAT order is limited to petitions that comply with Section 1252's requirements. *See* 8 U.S.C. § 1252(a)(4) ("[A] petition for review . . . in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT]."). This reading is only reinforced by FARRA. *See* FARRA § 2242(d), 112 Stat. 2681-822, codified at 8 U.S.C. § 1231 note ("[N]othing in this section shall be construed as providing any court jurisdiction to consider or review

that much weight on the standard footnote appearing in every opinion this court issues, one containing no hint that the jurisdictional concerns at issue here were considered.[14]

---

claims raised under the [CAT] except as part of the review of a final order of removal pursuant to [Section 1252].”). Ultimately, the lead opinion gives no reason why Section 1252(a)(4) allows us to bypass Section 1252(a)(1)'s jurisdictional limits on our review of immigration petitions to those challenging a “final order of removal.”

[14] That note's entire jurisdictional discussion reads: “We have jurisdiction under 8 U.S.C. § 1252(a)(1).” *Gomez-Gabriel v. Att'y Gen.*, 146 F.4th 327, 330 n.1 (3d Cir. 2025). That case also involved a petition materially different from Laureano's, given that it sought review of the denial of an asylum application—not just from the denial of withholding relief. *See id.* 329–30. The lead opinion also cites two pre-*Riley* panel opinions, Op. 10 n.9, neither with greater jurisdictional depth than *Gomez-Gabriel* and both involving petitions challenging the denial of asylum, as well as withholding and CAT relief. *See Manuel-Soto v. Att'y Gen.*, 121 F.4th 468, 470 (3d Cir. 2024) (no mention of jurisdiction); *Argueta-Orellana v. Att'y Gen.*, 35 F.4th 144, 147 (3d Cir. 2022) (“We have limited jurisdiction to review the Board's decision under 8 U.S.C. § 1252(a)(1), looking only for an abuse of discretion.”). Even less relevant are the two post-*Riley* non-precedential opinions cited by the lead opinion, both exercising (without analysis) jurisdiction over petitions that also challenged the denial of asylum applications. Op. 10 n.9 (citing *Lopez-Villeda v. Att'y Gen.*, No. 24-2916, 2026 WL 788904, at *1 (3d Cir. Mar. 20, 2026); *Carneiro v. Att'y Gen.*, No. 25-1060, 2025 WL 3281409, at *1 & n.1 (3d Cir. Nov. 25, 2025)). Indeed, relying on cases involving the denial of asylum—which Laureano's does not—glosses

Seeking to fill that void, the lead opinion then leans on *Riley*, suggesting that the Supreme Court implicity foreclosed all jurisdictional objections to judicial review of withholding-only orders under the INA. *See* Op. 7–11. I agree *Riley* did not answer the exact jurisdictional question at issue today: whether we lack jurisdiction over immigration petitions challenging the denial of withholding-only relief, absent a challenge to the final order of removal. Instead, *Riley* addressed only Section 1252(b)(1)'s time-bar, and whether jurisdiction is present to review a petition filed more than thirty days after the alien's final administrative removal order but within thirty days of the BIA's denial of withholding-only relief. *See* 606 U.S. at 263.[15]

Given this limited holding, the lead opinion overreads *Riley*'s disposition (a remand for further proceedings, rather than an outright dismissal for lack of jurisdiction) to decide a

---

over a crucial distinction. As the lead opinion explains, "[n]either statutory withholding or CAT 'prevents DHS "from removing [the] alien to a third country other than the country to which removal has been withheld or deferred,"'" Op. 6 n.4 (quoting *Guzman Chavez*, 594 U.S. at 531–32), while asylum permits an "individual to remain in the United States" unless and until it is "terminated" by the Attorney General, *id.* at 8–9 n.9 (citing 8 U.S.C. §§ 1101(a)(42)(A), 1158(c)(2) & (3)). Most importantly: Laureano does not seek asylum (and so the parties have never examined these questions) and I would not speculate on the interplay of these statutes even in dicta.

[15] *See also Riley*, 606 U.S. at 281 (Thomas, J., concurring) ("In this case, we decide only the issue on which we granted certiorari: the correctness of the Fourth Circuit's conclusion that it lacked jurisdiction based on the timing of Riley's petition for review.").

jurisdictional question not presented. *See* Op. 8–12 & nn.7, 9, 10, 11. To the contrary, "[i]t is not" the Supreme "Court's usual practice to adjudicate . . . legal . . . questions in the first instance." *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 435 (2016). Returning the matter rather than reaching for issues outside the writ of certiorari can hardly mean that the Supreme Court "necessarily" rejected all jurisdictional objections to Riley's petition. Those questions remained open for the courts of appeals to decide. *See also Riley*, 606 U.S. at 281 (Thomas, J., concurring) (noting, that beyond Section 1252(b)(1)'s time-bar, *Riley* did "not decide whether Riley's case is otherwise free of jurisdictional defects").[16]

In any event, *Riley*'s logic cuts the other way. If a withholding-only order is not the "final order of removal" that triggers the thirty-day period to file a petition under Section 1252(b)(1), *see* 606 U.S. at 267–69, it hardly stands to reason it should be a "final order of removal" that authorizes our review under Section 1252(a)(1). Congress, in short, created a single avenue for judicial review by making a final order of removal the jurisdictional minimum under Section 1252, about

[16] That Justice Thomas's concurrence raised similar concerns about our jurisdiction to review CAT orders absent a challenge to a final order of removal only reinforces the openness of this issue. *See* Op. 11–12, nn.10 & 11 (discussing *Riley*, 606 U.S. at 278–80 (Thomas, J., concurring)). There is no jurisprudence of omission transforming unanswered questions into federal precedent. The Court's silence on this issue is simply silence, not some silent signal that a novel question has been settled without a word written.

which the petitioner must raise a "colorable and consequential question." *See Monsalvo v. Bondi*, 604 U.S. 712, 722 (2025).[17]

By itself, a challenge to a CAT order does not meet that irreducible minimum. "A CAT order provides that, 'notwithstanding' a removal order, the government may not remove an individual to a particular 'designated country.'" *Id.* (quoting *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020)). It "is not itself a final order of removal because it is not an order concluding that the alien is deportable or ordering deportation," nor does it "affect the validity of the final order of removal," meaning it "does not merge into the final order of removal." *Nasrallah*, 590 U.S. at 582 (internal quotation marks omitted).[18] So while federal courts can review CAT and statutory withholding orders, they must do so only alongside their "review of a final order of removal." 8 U.S.C. § 1252(a)(1); *see also id.* § 1252(b)(9).[19]

---

[17] It is enough to "ask[] the court[] to settle a dispute over what that order mean[s]." *Monsalvo v. Bondi*, 604 U.S. 712, 723 (2025) (finding that a dispute over a removal order's voluntary departure date was enough to invoke Section 1252(a)(1)'s jurisdiction).

[18] This definition of a CAT order applies "by logical extension [to] statutory withholding." *Bhaktibhai-Patel*, 32 F.4th at 190.

[19] The lead opinion claims that the INA's "zipper clause," Section 1252(b)(9), "does not interfere with our jurisdiction." Op. 11–12 n.11. But that is only true if we have jurisdiction elsewhere, which we do not. The "zipper clause" confirms that when a court lacks jurisdiction over a petition under Section 1252(a)(1), it also lacks jurisdiction to review any questions of fact or law related to that alien's removal. *See id.* (citing 8 U.S.C. § 1252(b)(9)). The "zipper clause" thus confirms that

**2.**

Not only does the lead opinion adopt a reading at odds with the INA and *Riley*'s logic, it also creates an immediate split with the Ninth Circuit's decision in *Navarrete v. Bondi*, 170 F.4th 1214, 1225 (9th Cir. 2026), which held that "a petition advancing a standalone claim for review of a CAT order is not sufficient to invoke our jurisdiction under 8 U.S.C. § 1252(a)(1)."

Assessing its ability to review a petition challenging only the denial of a CAT order, *Navarrete* noted that jurisdiction turns on whether an order "qualifies as 'a final order of removal' for purposes of invoking our jurisdiction under 8 U.S.C. § 1252(a)(1)." *Id.* at 1221.[20] And "an order denying CAT protection is not a final order of removal, nor does it merge into a final order of removal." *Id.* at 1225 (citing *Nasrallah*, 590 U.S. at 581–83; *Riley*, 606 U.S. at 268–69).

---

our focus is Section 1252 and brings us full-circle to whether Laureano's petition challenges a "final order of removal." Since it does not, the "zipper clause" deprives us of the power to review any "questions of fact or law related to" the denial of Laureano's applications for withholding relief from DHS's reinstatement of her removal order, *see* 8 U.S.C. § 1252(b)(9).

[20] After all, "if a court does not have jurisdiction to hear a petition under 8 U.S.C. § 1252(a)(1), then it does not have jurisdiction to review any questions of fact or law related to such claims. 8 U.S.C. § 1252(b)(9), (g)." *Navarrete v. Bondi*, 170 F.4th 1214, 1221 (9th Cir. 2026).

That is because by its own terms Section 1252(a)(1) only gives courts of appeals "jurisdiction to hear petitions for review of final orders of removal"—not "any jurisdiction to hear CAT claims independent of challenges to final orders of removal." *Id.* at 1221. So "the only jurisdiction to review CAT orders is a 'pendent jurisdiction' requiring 'an independent basis of federal subject matter jurisdiction' under 8 U.S.C. § 1252(a)(1)—specifically, a petition for review of a final order of removal." *Id.* at 1222. Since Navarrete's petition from the denial of his request for CAT relief did not raise a challenge to his final order of removal, the Ninth Circuit dismissed his petition for lack of jurisdiction under 8 U.S.C. § 1252(a)(1). *Id.* at 1219 n.3, 1225.

**III.**

The lead opinion contains a final mystery. While two panel members agree to exercise jurisdiction over Laureano's petition, they deadlock on the actual issue presented: whether the BIA can rely on the Attorney General's opinion in *Matter of Y-L-*, 23 I. & N. Dec. 270, 274 (A.G. 2002). But the lead opinion takes an unusual approach to announcing the impasse, arguing at length (in Section IV, spanning nearly half its length) that *Matter of Y-L-* is at odds with 8 U.S.C. § 1231(b)(3)(B). I am lost reading this "loser-takes-all" approach—as I have no doubt will be future readers of this case.

For a start, the lead opinion appears to create a new rule of decision for petitions from administrative decisions before a deadlocked panel, a question no party has briefed and this Court has never addressed. Breaking new ground, the lead opinion invokes the Supreme Court's purported "practice" of "leaving intact the ruling under review" when "there is no

majority on the outcome." Op. 3 n.1 (citing *Costco Wholesale Corp. v. Omega, S.A.*, 562 U.S. 40 (2010) (per curiam); *Friedrichs v. Cal. Teachers Ass'n*, 578 U.S. 1 (2016) (per curiam)). But both cited cases "affirmed" a lower court's judgment given "an equally divided Court," *Costco*, 562 U.S. at 40 & *Friedrichs*, 578 U.S. at 1, rather than merely "leaving it intact" (as would, say, a dismissal-as-improvidently-granted).

So if this panel were evenly split, as the lead opinion claims, these cases suggest that the lead opinion should "affirm" the BIA's reliance on *Matter of Y-L-* in denying Laureano's withholding applications, rather than casting doubt on it. But the panel here is not "equally divided" since two of its members would reject Laureano's challenge to *Matter of Y-L-* (one on jurisdictional grounds, one on the merits), while only one would accept it.[21] Section IV, in short, is just a single minority view of an unresolved legal question.

I am unaware of any instance where this Court—or any other circuit—has showcased the *losing* view on an issue in a precedential opinion, rather than in a separate writing. That is no mere matter of "nomenclature," Op. 3 n.1, but a break from precedent and procedure certain to cause confusion by suggesting that this Court has decided what it has not.

* * *

[21] If we had jurisdiction I would join Judge Fisher's thoughtful and careful conclusion that *Matter of Y-L-* is a reasonable exercise of discretionary authority that Section 1231(b)(3)(B) has expressly delegated to the Attorney General—and that the BIA properly applied its framework to Laureano's case.

Lacking jurisdiction, we should dismiss Laureano's petition and so I respectfully dissent.